**TRENK, DIPASQUALE,**
**DELLA FERA & SODONO, P.C.**
427 Riverview Plaza
Trenton, NJ  08611
(609) 695-6070
Andrea Dobin
Michele M. Dudas
*Attorneys for Andrea Dobin,*
*Chapter 7 Trustee*

**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re:<br><br>RONALD J. RASLOWSKY,<br><br>　　　　　　　　　Debtor. | Chapter 7<br><br>Case No. 16-13754 (KCF)<br><br>Honorable Kathryn C. Ferguson,<br>Chief U.S.B.J.<br><br>**Hearing Date: August 8, 2017, at 10:00 a.m.** |

**CERTIFICATION OF ANDREA DOBIN, CHAPTER 7 TRUSTEE, IN REPLY TO OPPOSITION BY DEBTOR TO MOTION FOR AN ORDER HOLDING THE DEBTOR IN CONTEMPT OF CONSENT ORDER ENTERED APRIL 18, 2017, AND ORDER DIRECTING TURNOVER DATED MAY 30, 2017**

Andrea Dobin, of full age, hereby certifies and states as follows:

1.　I am the Chapter 7 Trustee ("Trustee") for Ronald J. Raslowsky, Chapter 7 debtor ("Debtor").  As such, I am fully familiar with the facts set forth herein and submit this Certification in response to the Opposition filed by the Debtor in the form of a Certification ("Debtor Cert.") (Docket No. 126) to my Motion for entry of an Order holding the Debtor in contempt of the Consent Order entered April 18, 2017 ("Consent Order"), and Order Directing Turnover dated May 30, 2017 ("Turnover Order") (the "Motion") (Docket No. 122).

2.　The Debtor Cert. provides this Court with a "woe-is-me" tale that, at first glance, makes it appear that the Debtor made every possible effort to comply with the Consent Order

and/or Turnover Order. The actual facts will demonstrate that the Debtor has not provided this Court with the complete version of events.

3. As an initial matter, I was forced to file the Motion after the Debtor and his counsel completely ignored at least three (3) written communications requesting a status of compliance with the Consent Order, between May 5, 2017 and July 5, 2017. In fact, the Debtor Cert. is the first update I have received at all regarding the Debtor's attempted compliance with the clearly defined obligations imposed upon him by Consent Order.

### A. Florida Property

4. It is clear that the Debtor has not complied and, at least with respect to the transfer of title to the Florida Property, has no intention of _ever_ complying with, the Consent Order as it relates to transferring of title to the Florida Property from his mother's name into his name. This, despite his actual consent to the course of actions to be taken (and based on the fact that his mother passed away almost five (5) years ago and title is not proper in her name; particularly when the Debtor is the only remaining beneficiary to his parents' trust). For the first time in the Debtor Cert., the Debtor now asserts that "my belief after talking with [counsel] in New Jersey and Florida is that the [Florida Property] is protected." The Debtor does not state from what he contends the Florida property is "protected". However, I must assume he means it is protected from _me_.

5. To be clear, the Debtor has never scheduled the Florida Property as real estate that he owns, obfuscating the nature of his interest by solely referencing his possible rights under a trust agreement on Schedule "B" of his Schedules.

6. The Debtor has not asserted an exemption of any kind in the (unscheduled) Florida Property. The Debtor has not asserted Florida State Law Exemptions.

7. The Debtor cannot unilaterally state that the Florida Property is entitled to be "protected" and/or be the judge and jury for such decisions. His suggestion that there is some sort of legal prohibition on my ability to sell the Florida Property fails as a matter of law and fact.

8. The Debtor also makes a blanket statement that "there are sufficient funds to cover the debt of the bankruptcy without having to sell my Florida Property." For the reasons set forth below, this statement is, at best, contradictory, at worst it is patently false.

9. Regardless as to the Debtor's position on whether the Florida Property could and/or should be <u>liquidated</u>, he <u>agreed</u> to transfer title to the Florida Property from his mother's name to his name in the Consent Order. At his request, the Consent Order provides that the Florida Property would be the last asset to be sold.[1] He has failed to do so and his non-compliance is intentional and completely contrary to the terms of the Consent Order – most likely because he realizes that the sale of the New Jersey Property or funding payments to his creditors from other sources are not viable options.

**B. New Jersey Property**

10. I agreed to turn over keys to the New Jersey Property (assuming the Debtor could obtain the necessary modification of the Restraining Order in effect) upon receipt of all titles to vehicles <u>and not before</u>.

11. The Debtor did not provide all titles until on or about May 2, 2017, apparently because he mislabeled the mailing envelope (clearly that is no one's fault but the Debtor's – a fact that he obfuscates). On the date I had all titles in my possession, I overnighted the keys to the Debtor's counsel to fulfill my obligations under the Consent Order.

---

[1] Implicit in this term is the Debtor's understanding that the Florida Property could be sold, thereby undercutting his newly minted theory that it is "protected" from sale for some reason.

3

12. The Debtor alleges that he was unable to retrieve the keys for the New Jersey Property until the end of May 2017 because he was at a "Drug and Alcohol Business" convention in Florida for approximately a month. According to our research, the "Drug and Alcohol Testing Industry Association" annual conference took place in Orlando, Florida, starting on May 16, 2017, and only lasted until May 18, 2017.[2] Therefore, this excuse of being at a "month-long" conference is also not accurate. Even if it were, it does not provide him with an excuse for failure to act diligently under the terms of the Consent Order. He consented to the terms of the Consent Order; he made the plans to travel to a conference in May while under obligations under the Consent Order. There is a distinction to be made between the Debtor's "explanation" for his contempt of the Consent Order and his "justification". He may be able to explain why he did not comply, but his explanations do not justify his non-compliance.

13. Moreover, the Debtor did not file his "emergent" motion with the Superior Court to modify the Restraining Order (which is the only way that the Debtor could enter the New Jersey Property to begin remodeling) until May 16, 2017, nearly a month after entering into the Consent Order. Any delay in obtaining a modified Restraining Order until early-June is once again through no one's fault but the Debtor's. He did not need any information from me to do what he needed to do.

14. The Debtor asserts that he has fielded several inquiries and offers for the New Jersey Property. Despite being the only person with authority to sell the New Jersey Property at this point, the Debtor has failed to relay any such information regarding the three (3) potentially serious buyers to me.

15. The Debtor goes to great lengths to detail the monies and improvements he allegedly invested into the New Jersey Property. The Court may need to be reminded that the

---

[2] See, http://www.datia.org/educations/calendar-of-events/month.calendar/2017/5/1/-.html

terms of the Consent Order were the result of negotiations that took place after the Debtor objected to my proposed abandonment of the New Jersey Property. The Debtor begged for the opportunity to improve the New Jersey Property and prepare it for sale believing that he would be able to generate sufficient funds to be able to satisfy the claims of creditors and avoid the sale of the Florida Property.[3]

16. I never asked that the Debtor do any work on the New Jersey Property, but, rather, allowed him the chance to do so. The Debtor's suggestion that the fact that he is being afforded this opportunity under the terms of the Consent Order while ignoring his obligations under other terms makes this position even more outrageous.

17. Moreover, the Debtor has been living at the New Jersey Property rent-free.

18. The Debtor's belated attempts to address the actions the New Jersey Property now come with substantial consequences. On July 31, 2017, M&T Bank ("M&T"), the first mortgage holder for the New Jersey Property, filed a Motion for Relief from Stay (Docket No. 125). I do not intend to object to M&T's motion as I do not believe that there is equity in the Property, regardless of any work that the Debtor may have completed there.

19. The New Jersey Property was scheduled for sheriff sale on the eve of the bankruptcy filing. If stay relief is granted, the New Jersey Property will be sold.

20. If and when I am authorized to abandon the New Jersey Property and/or stay relief is granted, it appears to be impossible that the Debtor would be able to close on any such sale prior to the rescheduled sheriff sale. There are judgment liens of approximately $25,000 (see Proof of Claim No. 12). It is unclear how he can satisfy these liens outside of the

---

[3] The work must be done prior to abandonment as the bankruptcy was filed on the eve of sheriff sale. If the sale is not accomplished in the context of the Chapter 7, it will be virtually impossible for the Debtor to achieve his goals.

bankruptcy context where they will be deemed unperfected (an option not available in a non-bankruptcy sale).

21. Moreover, the Motion for Relief sets forth a payoff for M&T in the amount of $635,186.35. There is a second mortgage in favor of Wells Fargo for business-related debt of the Debtor in the estimated amount of $200,000.

22. I had listed the New Jersey Property for sale at $899,900 in the early days of my appointment, and did not receive any offers that would satisfy the secured creditors and provide a distribution to administrative and/or general unsecured creditors.[4] I have no evidence that the Debtor will achieve a different result, even with the alleged improvements made to date.

### C. Motion to Modify Claim of Maria Geletei

23. The Debtor submits that the "Delay in expunging Maria Geletei's claim took an unbelievable amount of time as [he] had to review item by item and find comparable pricing makes and models for a theft report that is being filed with the Toms River Police Department." It is unclear what "theft reports" have to do with his obligations awarded pursuant to a Final Judgment of Divorce (which stemmed from an agreed upon Memorandum of Understanding which the Debtor subsequently appealed and lost on appeal).

24. The reason that the Consent Order required the Motion is that Ms. Geletei's claim is over $300,000. To the extent that it withstands a motion to expunge/modify, it will almost assuredly make it impossible for the Debtor to achieve his goal of satisfying all claims from the sale of the New Jersey Property. Importantly, by failing to create clarity on the size of the creditor body, the Debtor is depriving me of the ability to make the determination that, in fact, the Florida Property must be sold. I believe that this is his intention.

---

[4] As this Court will recall, I filed an Adversary Complaint at Adv. Pro. No. 16-1550 (KCF) against M&T and Wells Fargo determine the extent and/or validity of their claims. Neither creditor would settle or reduce their payoffs during Court-Ordered mediation.

25. The Motion was to have been filed within thirty (30) days of the Consent Order. The explanation provided makes no sense and is no reason for the delay.

26. It has <u>still</u> not been filed. I believe that it will never be filed because the Debtor has no basis to challenge Ms. Geletei's claim. He has already appealed it in the State Court and lost.

**D. Other Considerations**

27. The Debtor, on the one hand, complains that he earns $638 per week and sometimes does not take a paycheck (<u>see</u> Paragraph 21 of the Debtor Cert.) but, on the other hand, alleges that he believes he has the ability to (i) properly fund the improvements on the New Jersey Property (while paying the accruing real estate taxes and insurance – Paragraph 1 of the Consent Order); and (ii) pay all creditors in full (<u>see</u> Paragraph 7 of Debtor Cert.) without the sale of the Florida Property.

28. In approximately four (4) months, the Debtor spent the more than $40,000 that is the subject of the Turnover Order. He has made no effort to repay it, but, rather states rather cavalierly that he spent the money. A review of the bank statements do not reveal any substantial asset acquisitions but, rather, significant spending for travel, food, <u>women's</u> clothing, and inexplicably, the Bradford Exchange (an online retailer of giftware and collectibles).[5]

29. Not including the claim of Ms. Geletei in the amount of $315,615, the Debtor's unsecured creditors total approximately $25,000 and there is the additional claim of $25,000 for the judgment creditor asserting a secured status (Claim 12). There is a secured claim of

---

[5] There were also a few other checks which my counsel demanded copies of on June 22, 2017, which still have not been produced.

approximately $10,000 for a vehicle loan.  The Debtor also has priority tax obligations of $25,779.26, but those amounts are based upon unfiled returns and may be even higher.[6]

30. Plain and simple, this Debtor has no regard for his negotiated agreements, Orders of this Court or his obligations as a Chapter 7 Debtor.

31. The Debtor Cert. is nothing more than a series of excuses, casting blame on everyone but the Debtor for his own inactions.  It is clear that this Debtor has not come before me or this Court in good faith.

32. I respectfully request that the Motion be granted in its entirety.

I hereby certify that the foregoing statements made by me are true.  If any of the foregoing statements made by me are willfully false, I am subject to punishment.



/s/ Andrea Dobin
ANDREA DOBIN

Dated: August 4, 2017

4844-4838-0748, v. 1

---

[6] I have also repeatedly requested that the Debtor file any delinquent tax returns so as to determine the amount due to the Internal Revenue Service