**McMANIMON, SCOTLAND
& BAUMANN, LLC**
427 Riverview Plaza
Trenton, NJ  08611
(609) 695-6070
Andrea Dobin (adobin@msbnj..com)
Michele M. Dudas (mdudas@msbnj.com)
*Attorneys for Andrea Dobin, Chapter 7 Trustee*

**UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re:<br><br>RONALD J. RASLOWSKY,<br><br>　　　　　　　Debtor. | Chapter 7<br><br>Case No. 16-13754 (KCF)<br><br>**Hearing Date: April 30, 2019**<br>**Hearing Time: 10:00 a.m.** |

**CERTIFICATION OF ANDREA DOBIN, CHAPTER 7 TRUSTEE, IN OPPOSITION TO MOTION OF RONALD J. RASLOWSKY, CHAPTER 7 DEBTOR, FOR SALE OF CERTAIN ASSETS, FOR SANCTIONS, AND FOR OTHER RELIEF**

Andrea Dobin, of full age, certifies as follows:

1.　　I am the duly appointed Bankruptcy Trustee in the bankruptcy proceeding of Ronald J. Raslowsky, Chapter 7 debtor (the "Debtor").  I submit this Certification in Opposition of the Debtor for Sale of Certain Assets, for Sanctions, and for Other Relief ("Motion") and Notice of Private Sale (Docket Nos. 166 and 167).   I have personal knowledge of the facts set forth herein, except as noted.

2.　　On March 1, 2016, the Debtor filed an emergent voluntary petition for relief under Chapter 11 of the Bankruptcy Code (Docket No. 1).

3. After extending the time to file his missing schedules (Docket No. 12), they were filed on April 4, 2016 (Docket No. 22).

4. The Debtor lists an interest as a "Beneficiary of Trust Agreement; Property in West Palm Beach, FL" on Schedule B ("Trust").

5. The Trust relates to the decedent estate for his parents, Joseph Raslowsky ("Joseph") and Lorraine Raslowsky ("Lorraine").

6. Upon information and belief, Joseph passed away on March 23, 2010, and Lorraine passed away on December 29, 2012.

7. I was informed that the sole asset of the Trust is 7633 Tahiti Lane, Suite 204, Lake Worth, Florida ("Florida Property") which has no mortgage on it.

8. The Debtor testified at Rule 2004 examination that he was the sole beneficiary of the Trust, as his brothers, David Raslowsky ("David") and Gregory Raslowsky ("Gregory"), relinquished their interest in the Trust (where appropriate, David and Gregory will be collectively referred to as the "Brothers").

9. On April 27, 2016, the Office of the United States Trustee ("UST") filed a Motion on shortened time to convert the case to Chapter 7, or in the alternative, to have it dismissed pursuant to 11 U.S.C. § 1112(b) for, *inter alia*, the failure to maintain insurance on the Property ("Motion to Convert") (Docket No. 34).

10. By Order entered May 11, 2016, the Motion to Convert was granted (Docket No. 39) and on that same date, I was appointed to act as Chapter 7 Trustee (Docket No. 41).

11. The Debtor is the co-owner of the real property located at 2226 Ponybrook Way, Toms River, New Jersey ("Residence"). His ex-wife, Maria Geletei, is the co-owner.

12. On January 19, 2017, I filed a Notice to abandon the Estate's interest in the Residence ("Notice") (Docket No. 91).

13. On February 13, 2017, the Debtor objected to the Notice (Docket No. 93) and filed a second Motion to convert his Chapter 7 case to Chapter 11 (Docket No. 94) ("Second Motion to Convert").[1]  I objected to the Second Motion to Convert (Docket No. 99).

14. I began discussions with the Debtor to discuss a global resolution of the issues pending between the Debtor and me; specifically, I wanted to address the Debtor's desire to rehabilitate the Residence and sell it for an increased price that would be sufficient to satisfy secured creditors' claims and generate a distribution for the Estate.  This result would have benefitted all interested parties.

15. After coming to terms regarding a global resolution, in or about late-March or early-April 2017, it came to my attention that the Debtor, as one of the successors in interest, received certain payment(s) relating to a class action settlement involving Joseph (the "Class Action Settlement").

16. On or about April 13, 2017, I entered into a Consent Order (Docket No. 105), which resolved his Second Motion to Convert and the Notice.

17. As it relates to the Residence and the Florida Property, the Consent Order specifically provided:

> 1. I would withdraw the Notice without prejudice.  Within sixty (60) days from entry of the Consent Order, the Debtor, at his own cost, complete improvements to the Residence intended to improve its value, including, but not limited to, sodding the lawn, power washing the house, having furnaces and other systems inspected and, if necessary, repaired.  The Debtor would pay real estate taxes for the Residence from the date hereof until the Residence is sold or abandoned, will maintain casualty and liability insurance in

---

[1] An original Motion to convert the case to Chapter 11 was filed on August 23, 2016 and denied (see Docket Nos. 78, 81 and 82).

        appropriate amounts, in which I would be named as additional insured.

2. Once completed, I would re-list the Residence for sale in an amount which will generate a distribution for creditors of the Estate. If the Property is not under contract at an acceptable price by November 1, 2017, I, at my discretion would initiate a process intended to result in abandonment of the Residence. Debtor would not object to my abandonment of the Residence at that time.

3. Within thirty (30) days from entry of the Consent Order, the Debtor would take personal title to the Florida Property which was currently titled in the name of the Trust. The Debtor would provide proof of payment of all condominium dues and assessments associated with the Florida Property, and proof of casualty and liability insurance on the Florida Property with acceptable coverage limits which names me as additional insured. So long as the Debtor complied with these requirements, the Florida Property would be the last asset to be sold by me and would only be sold if the other assets do not generate enough proceeds to satisfy all claims in full.

18. The Debtor defaulted on the Consent Order, *inter alia*, by failing to take actions with respect to the Residence.

19. I also subsequently learned that Joseph was named as a class-participant for the prescription drug "Actos," as it related to the side effects of causing bladder cancer. The Debtor never told me about this claim and his entitlement to proceeds. Lorraine was the original claimant in the class action, but the Debtor and the Brothers became beneficiaries for any settlement after her death in 2012. There were two settlement payments made in August 2016 and January 2017 in the aggregate of $219,409.90. The Debtor filed amended Schedules A, B and C on or about August 2 and 5, 2016 (Docket No. 72 and 75) and did not disclose any right to the proceeds. The Debtor did not disclose his right to this payment at his Rule 2004 examination and he deferred a portion of the payment until January 2017.

20. On May 30, 2017, the Court entered an Order directing turnover by the Debtor of $40,193.41 to me. I received the remaining balance due of approximately $90,000 from the law firm handling the class action litigation (Docket No. 113) (the "Turnover Order"). I have not received any funds from the Debtor on account of the Turnover Order, and the Debtor failed to provide accounting.

21. As such, on July 17, 2017, I filed a Motion to find the Debtor in contempt of the Consent Order and Turnover Order (Docket No. 122), which was granted by Order entered August 9, 2017 ("Contempt Order") (Docket No. 132).

22. The Contempt Order authorized me to executed a Deed for the Florida Property, take action to secure it, and granted related relief. The Contempt Order also authorized me to re-file the Notice for the Residence.

23. Also, on July 31, 2017, M&T Bank ("M&T") filed a Motion for relief from stay with respect to the Residence ("Motion for Relief") (Docket No. 125). On October 23, 2017, I responded to the Motion for Relief (Docket No. 147), and on November 13, 2017, a Conditional Order vacating the stay as to the Residence was entered ("Conditional Order") (Docket No. 150).

24. The Conditional Order provided that I had until December 31, 2017 to obtain a Contract of Sale for the Residence, otherwise the stay would terminate.

25. I also retained Furr Cohen P.A. as local special counsel ("Special Counsel") regarding the disposition of the Florida Property (Docket Nos. 152 and 153).

26. Despite the plain language of the Contempt Order, based upon instructions received from Special Counsel's title company, on January 22, 2018, I filed an adversary proceeding to determine the extent and validity of the rights of the Brothers in the Florida Property ("Trust Litigation") (Adv. Pro. No. 18-1024 (KCF)).

27. Based upon the representations of the Debtor that he was the sole beneficiary of the Trust which owned the Florida Property, I did not anticipate any objections by the Brothers.

28. However, after obtaining Default Judgment, the Brothers sought to vacate same, asserting that they still maintained an ownership interest in the Trust. This position was directly contrary to the Debtor's sworn statements.

29. So I could commence collection actions for amounts due to the Estate under the Turnover Order, on June 18, 2018, I obtained a Judgment for Sum Certain ("Judgment") (Docket No. 158) in the amount of $40,193.41, based upon the terms of the Turnover Order.

30. I subsequently domesticated the Judgment and recorded it as a lien with the State of New Jersey.

31. In or about February 2019, I reached a settlement in principle with the Debtor, as well as with the Brothers to resolve the Trust Litigation.

32. Specifically, the Brothers agreed to pay $60,000 for the Estate's interests in the Florida Property, and the Debtor agreed to satisfy the Judgment by paying $40,000, upon the sale of the Residence or through some other means (collectively, the "Settlement").

33. While my counsel was in the process of drafting the appropriate pleadings for approval of the Settlement, the within Motion was filed, which is completely contrary to the offer relayed to and ultimately accepted by me.

34. Moreover, the Motion is not sound in law or equity, and fails to set for any basis for the relief requested therein.

35. First, to the extent the abandonment of the Residence was never effectuated, the Debtor lacks standing.[2]

---

[2] The failure to re-file the Notice was an innocent oversight, particularly based upon the entry of the Conditional Order.

36. That said, it is of no moment based upon the relief from stay granted to the senior lienholder, M&T.

37. Moreover, no cause exists to discharge the Judgment lien. The Judgment was obtained during the course of this proceeding based upon the Debtor's conduct for failing to disclose substantial assets through his right to receive the proceeds from the class action settlement on behalf of Joseph, as well as his failure to comply with existing Court Orders.

38. Quite simply, there is no Section of the Bankruptcy Code which would warrant or justify the relief requested by the Debtor.

39. Based upon the foregoing, the Motion should be denied in its entirety.

I hereby certify that the above statements made by me are true. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

Dated: April 22, 2019                                   /s/ Andrea Dobin
                                                                    ANDREA DOBIN

4811-2275-8036, v. 1